1
2
3
4
5              UNITED STATES DISTRICT COURT
6              EASTERN DISTRICT OF WASHINGTON

7    SHELLY P.,
                                        NO. 2:23-CV-0065-TOR
8                          Plaintiff,
                                        ORDER DENYING PLAINTIFF'S
9         v.                            MOTION TO REMAND CLAIM

10   KILOLO KIJAKAZI, Acting
     Commissioner of the Social Security
11   Administration,

12                         Defendant.

13        BEFORE THE COURT is Plaintiff's motion for this Court to remand her

14   claim for benefits under Title XVI of the Social Security Act to the Social Security

15   Administration (ECF No. 7) and Defendant's motion for this Court to affirm the

16   final order of the Acting Commissioner (ECF No. 11).  Plaintiff is represented by

17   Christopher H. Dellert.  Defendant is represented by Brian M. Donovan, Erin F.

18   Highland, and Jacob P. Phillips.  The matter was submitted for consideration

19   without oral argument.  The Court has reviewed the administrative record and the

20   parties' completed briefing and is fully informed.  For the reasons discussed below,

the Court **DENIES** Plaintiff's motion (ECF No. 7) and **GRANTS** Defendant's

motion (ECF No. 11).

## JURISDICTION

The Court has jurisdiction under 42 U.S.C. §§ 405(g), 1383(c)(3).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social

Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is

limited: the Commissioner's decision will be disturbed "only if it is not supported

by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153,

1158-59 (9th Cir. 2012) (citing 42 U.S.C. § 405(g)).  "Substantial evidence" means

relevant evidence that "a reasonable mind might accept as adequate to support a

conclusion." *Id.* at 1159 (quotation and citation omitted).  Stated differently,

substantial evidence equates to "more than a mere scintilla[,] but less than a

preponderance." *Id.* (quotation and citation omitted).  In determining whether this

standard has been satisfied, a reviewing court must consider the entire record as a

whole rather than searching for supporting evidence in isolation.  *Id.*

In reviewing a denial of benefits, a district court may not substitute its

judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152,

1156 (9th Cir. 2001).  If the evidence in the record "is susceptible to more than one

rational interpretation, [the court] must uphold the ALJ's findings if they are

1    supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674

2    F.3d 1104, 1111 (9th Cir. 2012).  Further, a district court "may not reverse an

3    ALJ's decision on account of an error that is harmless." *Id.*  An error is harmless

4    "where it is inconsequential to the [ALJ's] ultimate nondisability determination."

5    *Id.* at 1115 (quotation and citation omitted).  The party appealing the ALJ's

6    decision generally bears the burden of establishing that it was harmed.  *Shinseki v.*

7    *Sanders*, 556 U.S. 396, 409-10 (2009).

8                    **FIVE-STEP SEQUENTIAL EVALUATION PROCESS**

9           A claimant must satisfy two conditions to be considered "disabled" within

10   the meaning of the Social Security Act.  First, the claimant must be unable "to

11   engage in any substantial gainful activity by reason of any medically determinable

12   physical or mental impairment which can be expected to result in death or which

13   has lasted or can be expected to last for a continuous period of not less than 12

14   months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  Second, the claimant's

15   impairment must be "of such severity that he is not only unable to do his previous

16   work[,] but cannot, considering his age, education, and work experience, engage in

17   any other kind of substantial gainful work which exists in the national economy."

18   42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

19           Pursuant to its authority under the Social Security Act, the Social

20   Security Administration has established a five-step sequential analysis to determine

whether a claimant satisfies the above criteria.  *See* 20 C.F.R. § 416.920(a)(4)(i)-(v).  At step one, the Commissioner considers the claimant's work activity.  20 C.F.R. § 416.920(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20 C.F.R. § 416.920(a)(4)(ii).  If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three.  20 C.F.R. § 416.920(c).  If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled.  *Id.*

At step three, the Commissioner compares the claimant's impairment to several impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity.  20 C.F.R. § 416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does meet or exceed the severity

1  of the enumerated impairments, the Commissioner must pause to assess the

2  claimant's "residual functional capacity."  Residual functional capacity ("RFC") is

3  generally defined as the claimant's ability to perform physical and mental work

4  activities on a sustained basis despite his or her limitations (20 C.F.R. §

5  416.945(a)(1)), and is relevant to both the fourth and fifth steps of the analysis.

6           At step four, the Commissioner considers whether, in view of the claimant's

7  RFC, the claimant is capable of performing work that he or she has performed in

8  the past ("past relevant work").  20 C.F.R. § 416.920(a)(4)(iv).  If the claimant is

9  capable of performing past relevant work, the Commissioner must find that the

10  claimant is not disabled.  20 C.F.R. § 416.920(f).  If the claimant is incapable of

11  performing such work, the analysis proceeds to step five.

12           At step five, the Commissioner considers whether, in view of the claimant's

13  RFC, the claimant is capable of performing other work in the national economy.

14  20 C.F.R. § 416.920(a)(4)(v).  In making this determination, the Commissioner

15  must also consider vocational factors such as the claimant's age, education and

16  work experience.  *Id.*  If the claimant is capable of adjusting to other work, the

17  Commissioner must find that the claimant is not disabled.  20 C.F.R. §

18  416.920(g)(1).  If the claimant is not capable of adjusting to other work, the

19  analysis concludes with a finding that the claimant is disabled and is therefore

20  entitled to benefits.  *Id.*

1    The claimant bears the burden of proof at steps one through four above.

2    *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to

3    step five, the burden shifts to the Commissioner to establish that (1) the claimant is

4    capable of performing other work; and (2) such work "exists in significant

5    numbers in the national economy."  20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*,

6    700 F.3d 386, 389 (9th Cir. 2012).

7                                       **ALJ'S FINDINGS**

8        On May 29, 2020, Plaintiff protectively filed an application for Title XVI

9    supplemental security income benefits, alleging a disability onset date of May 1,

10   2014.  Administrative Transcript ("Tr."), ECF No. 6 at 20.  The application was

11   denied initially on July 6, 2020, Tr. 163, and on reconsideration on April 8, 2021,

12   Tr. 175.  Plaintiff appeared at a telephonic hearing before an administrative law

13   judge ("ALJ") on January 12, 2022.  Tr. 58-79.  On February 1, 2022, the ALJ

14   denied Plaintiff's claim.  Tr. 17-33.

15       At step one of the sequential evaluation analysis, the ALJ found Plaintiff had

16   not engaged in substantial gainful activity since May 29, 2020, the application

17   date.  Tr. 23.  At step two, the ALJ found Plaintiff had the following severe

18   impairments: bilateral carpal tunnel syndrome, obesity, depression, posttraumatic

19   stress disorder ("PTSD"), and generalized anxiety disorder.  *Id.*  At step three, the

20   ALJ found that Plaintiff's impairments did not meet or medically equal the severity

of a listed impairment.  Tr. 24.  The ALJ then determined that Plaintiff had the

RFC to perform medium work as defined in 20 C.F.R. § 416.967(c) within the

following limitations:

> [W]hile postural activities can generally be performed occasionally, the claimant cannot climb ladders, ropes, or scaffolds; kneel; crouch; or crawl.  The claimant can frequently but not constantly handle, finger, and feel, and she needs to avoid concentrated exposure to extreme temperatures, wetness, and humidity, and all hazards such as unprotected heights and dangerous moving machinery.  From a psychological perspective, the claimant is able to understand, remember, and carry out simple, routine tasks, and she needs to be in a predictable environment with seldom change.  In addition, there should be no public and only brief, superficial interaction with coworkers.

Tr. 25.

At step four, the ALJ found that Plaintiff was unable to perform any past

relevant work.  Tr. 32.  At step five the ALJ found that, considering Plaintiff's age,

education, work experience, RFC, and testimony from a vocational expert, there

were other jobs that existed in significant numbers in the national economy which

Plaintiff could perform, such as cleaner II, janitor, or basket filler.  Tr. 32-33.

Based on the foregoing, the ALJ concluded that Plaintiff was not under a disability

as defined in the Social Security Act from May 29, 2020 through February 1, 2022,

the date of her decision.  Tr. 33.

On January 17, 2023, the Appeals Council denied review, Tr. 6-11, at which

point the ALJ's decision became the final decision of the Commissioner for

purposes of judicial review.  *See* 42 U.S.C. § 1383(c)(3).

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her supplemental security income benefits under Title XVI of the Social Security Act.  Plaintiff submits the following issues for this Court's review:

1.    Whether the ALJ failed to provide specific, clear, and convincing reasons for disregarding Plaintiff's symptom testimony; and

2.    Whether the ALJ properly weighed the medical opinion evidence. ECF No. 7 at 1.

## DISCUSSION

### A.    Plaintiff's Symptom Testimony

Plaintiff alleges the ALJ failed to supply clear and convincing reasons for discrediting her symptom testimony.  ECF No. 7 at 4-10.

The Commissioner undertakes a two-step analysis to determine whether a claimant's subjective symptom testimony can be reasonably accepted as consistent with the objective record evidence.  Social Security Ruling ("SSR") 16-3p, 2016 WL 1119029, at *2.  "First, the ALJ must determine whether there is 'objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged.'"  *Molina*, 674 F.3d at 1112 (quoting *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009)).  "The

1  claimant is not required to show that [the claimant's] impairment 'could reasonably

2  be expected to cause the severity of the symptom [the claimant] has alleged; [the

3  claimant] need only show that it could reasonably have caused some degree of the

4  symptom.'"  *Vasquez*, 572 F.3d at 591 (quoting *Lingenfelter v. Astrue*, 504 F.3d

5  1028, 1035-36 (9th Cir. 2007)).

6       Even if a plaintiff meets the first prong of the two-step test, the ALJ will

7  only proceed to the second part of the analysis absent evidence of malingering.

8  When affirmative evidence of malingering exists, the ALJ is not required to

9  provide clear and convincing reasons to reject the claimant's testimony.  *Carmickle*

10  *v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008).  Instead, the

11  ALJ may reject the claimant's symptom testimony merely upon identifying some

12  evidence of malingering in the record.  *Benton ex rel. Benton v. Barnhart*, 331 F.3d

13  1030, 1040 (9th Cir. 2003); *see also Vasquez*, 572 F.3d at 591 (departing from the

14  standard set forth in *Robbins v. Soc. Sec. Admin.* 466, F.3d 880 (9th Cir. 2006),

15  which required an explicit finding of malingering).

16       Assuming that the claimant meets the first prong and lacking record

17  evidence of malingering, the ALJ will proceed to the second step of the test.

18  "[T]he ALJ can only reject the claimant's testimony about the severity of the

19  symptoms if she gives 'specific, clear and convincing reasons' for the rejection."

20  *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations omitted).

1  General findings are insufficient; rather, the ALJ must identify what symptom

2  claims are being discounted and what evidence undermines these claims. *Id.*

3  (quoting *Lester*, 81 F.3d at 834); *Thomas*, 278 F.3d at 958 (requiring the ALJ to

4  sufficiently explain why he or she discounted claimant's symptom claims). "The

5  clear and convincing [evidence] standard is the most demanding required in Social

6  Security cases." *Garrison*, 759 F.3d at 1015 (quoting *Moore v. Comm'r of Soc.*

7  *Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

8       Factors to be considered in evaluating the intensity, persistence, and limiting

9  effects of a claimant's symptoms include: (1) daily activities; (2) the location,

10  duration, frequency, and intensity of pain or other symptoms; (3) factors that

11  precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and

12  side effects of any medication an individual takes or has taken to alleviate pain or

13  other symptoms; (5) treatment, other than medication, an individual receives or has

14  received for relief of pain or other symptoms; (6) any measures other than

15  treatment an individual uses or has used to relieve pain or other symptoms; and (7)

16  any other factors concerning an individual's functional limitations and restrictions

17  due to pain or other symptoms. SSR 16-3p, 2016 WL 1119029, at *7-*8; 20

18  C.F.R. § 416.929(c). The ALJ is instructed to "consider all of the evidence in an

19  individual's record," "to determine how symptoms limit ability to perform work-

20  related activities." SSR 16-3p, 2016 WL 1119029, at *2.

The ALJ found Plaintiff's physical and mental impairments could reasonably be expected to produce her alleged symptoms but that her statements concerning the intensity, persistent and limiting effects of her symptoms were inconsistent with the evidence.  Tr. 26.  Plaintiff only challenges the ALJ's determination of her mental impairment.

As relevant here, the ALJ found the medical evidence and treatment records did not support the degree of mental impairment asserted.  Tr. 27.  Regarding Plaintiff's mental functioning, the ALJ explained that Plaintiff's performance on a psychological evaluation conducted in April 2020 showed that, despite her depressed and anxious mood, she was oriented to her surroundings, had good memory, and had some insight and ability to think abstractly.  Tr. 28. Additionally, in May 2020, despite self-reporting that she had a tired mood, the applicant appeared well-groomed, was cooperative and engaged, and had improved mental functioning as compared to the April evaluation.  Tr. 28-29.  From November 2020 through October 2021, the ALJ noted that despite presenting as anxious and depressed with labile affect at certain appointments, the providers continued to characterize Plaintiff as alert, oriented, well-groomed with adequate hygiene, cooperative, and engaged, with intact judgment and insight.  Tr. 29. Various tests established that Plaintiff had an appropriate fund of knowledge and could follow a three-step command as well as the conversation.  *Id.*  In February

1  2021, Plaintiff requested no further changes to her prescription for anxiety, which

2  the ALJ took to mean "that her current medication regimen was helpful for

3  symptoms of [that] impairment." *Id.*

4       The ALJ also considered evidence of Plaintiff's ability to acquire

5  employment. Tr. 29. Although Plaintiff was fired only approximately a week after

6  starting her new job, the ALJ considered Plaintiff's self-report to her licensed

7  mental health counselor that she understood the training, was meeting

8  expectations, and was let go without cause as evidence that Plaintiff's mental

9  limitations were not as severe as alleged. *Id.* Based on these medical records and

10  activity reports, the ALJ concluded that Plaintiff's impairments were not as severe

11  as represented.

12       Plaintiff now argues that the ALJ's consideration of the medical opinions

13  was improper because many of the appointments were telephonic. ECF No. 7 at 7.

14  She explains that many of her mental symptoms are triggered by a fear of leaving

15  her home, *id.* at 4-5, and that reports of her generally affable and alert presentation

16  in many of the mental health evaluations were therefore uncredible, *id.* at 7.

17  Plaintiff also contends that the ALJ impermissibly relied on one report which was

18  for a physical wellness check; that the ALJ generally ignored notes in the same

19  records which indicated she was agitated, depressed, distracted, and anxious; and

20  that many of the observations the ALJ cited—for instance, regarding her dress,

hygiene, and engagement—are irrelevant to her mental conditions. *Id.* at 8-9.
Finally, Plaintiff urges that the reference to maintaining her anxiety medication
regimen in February 2021 was not probative because the record actually indicated
she had already "tried every medication possible without improvement" and did
not believe new prescriptions would alleviate any of her symptoms. *Id.* at 9.

An ALJ may not discredit a claimant's symptom testimony and deny
benefits solely because the degree of the symptoms alleged is unsupported by
objective medical evidence. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir.
2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair v. Bowen*,
885 F.2d 597, 601 (9th Cir. 1989); *Burch*, 400 F.3d at 680. However, the objective
medical evidence is a relevant factor, along with the medical source's information
about the claimant's pain or other symptoms, in determining the severity of a
claimant's symptoms and their disabling effects. *Rollins*, 261 F.3d at 857; 20
C.F.R. § 416.929(c)(2).

The Court finds that the ALJ's determination of the intensity, persistence,
and limiting effects of Plaintiff's symptoms was supported by substantial evidence
in the medical records. As an initial matter, the fact that most of the appointments
were telephonic does not discredit the observations contained within those reports.
Plaintiff maintained that she was often anxious and fearful of going out alone in
public, Tr. 348-49, but it is unclear from the record how the specific anxiety she

felt about leaving her home fueled her symptoms of distraction, short-term memory loss, and ability to follow directions any more than her generalized anxiety, PTSD, or depression did, *see* Tr. 65-66 (Plaintiff discussing her anxiety around leaving the home), 68 (Plaintiff discussing trouble focusing and other symptoms).  Moreover, it is counterintuitive for Plaintiff to argue that findings which favored the Commissioner should be rejected due to the telephonic format of those medical sessions while simultaneously pressing that provider's observations from those same visits which favored her should be accepted as true. To the extent Plaintiff desired to present evidence of how her symptoms worsened for in-person medical sessions, it was her burden to submit evidence of that.  *See Meanel v. Apfel*, 172 F.3d 1111, 113 (9th Cir. 1999) ("The claimant bears the burden of proving that she is disabled.").

The Court also finds that the medical records support the ALJ's decision. Plaintiff points to other evidence in those same records which could be construed in her favor—for instance, the fact that she presented as depressed and anxious at times.  However, the relevant question is not whether some countervailing evidence exists to reinforce a plaintiff's claim, but instead whether the ALJ's decision to reject the plaintiff's allegations was supported by specific, clear, and convincing evidence.  *Garrison*, 759 F.3d at 1015; *see also Connett v. Barnhart*, 340 F.3d 871, 873 (9th Cir. 2003 ("[T]he ALJ, who holds a hearing in the

1    Commissioner's stead, is responsible for determining credibility and resolving

2    conflicts in medical testimony.").  In this case, the ALJ credited that Plaintiff

3    presented as depressed, anxious, and with labile affect at certain appointments, but

4    also found the simultaneous observations that Plaintiff exercised good recall,

5    ability to follow instructions, and intact judgment to establish that Plaintiff's

6    symptoms were not as severe as alleged.  Tr. 27-29.  That determination was

7    reasonable in view of the record before the ALJ.

8         Relatedly, Plaintiff argues that certain findings the ALJ relied upon were

9    irrelevant, that the ALJ impermissibly relied upon the testimony from one medical

10   doctor to assess her well-being, and that her anxiety treatment regimen was not

11   effective as the ALJ alleged.  The findings the ALJ relied upon which Plaintiff

12   asserts to be irrelevant—for instance, her hygiene, appearance, and mannerisms—

13   are relevant in light of Plaintiff's assertions that she often had conflict with others,

14   including family and friends, and that she sometimes wore pajamas and watched

15   television all day.  *See* Tr. 67.  These details suggest Plaintiff was capable of

16   appropriate interaction with colleagues, subject to the limitations addressed in the

17   RFC.  Similarly, Plaintiff does not explain how the ALJ was not permitted to rely

18   upon a medical doctor's testament to her mental health, but regardless, related

19   records from providers with therapeutic backgrounds continue to support the ALJ's

20   findings.  *See Molina*, 674 F.3d at 1111 (courts will not reverse for harmless error).

Finally, Plaintiff's claim that her anxiety medication was ineffective and that she had pursued all other prescription options without success is not supported by the record. *See* Tr. 843 (patient note indicating the medicine was refilled with "no further medication changes for now per [patient's] request" and recommending Plaintiff to continue her scheduled counseling). The note which Plaintiff cites in support of the proposition that she had already tried every medication possible was apparently tied to her desire to lose weight and weight-related anxiety. Tr. 842.

The ALJ also discussed Plaintiff's prior employment, which lasted for approximately one week, as a basis for rejecting her claims. An ALJ is entitled to consider "any work activity" in assessing whether a claimant is disabled. *Ford v. Saul*, 950 F.3d 1141, 1156 (9th Cir. 2020). Plaintiff maintains that the short-lived nature of the employment establishes that she could not hold a job, but also testified that the job was intended to be "temporary." Tr. 72. Accordingly, it was not unreasonable for the ALJ to view evidence of Plaintiff's temporary employment as tipping the scales in favor of the Defendant.

Overall, the Court finds the ALJ provided clear and convincing reasons supported by substantial evidence in the record to discount Plaintiff's subjective symptom testimony.

//

//

**B.      Medical Opinion Testimony**

Plaintiff argues the ALJ improperly rejected the medical opinions of licensed mental health counselor ("LMHC") Vicki Bringman and Dr. Patrick Metoyer.

As a preliminary matter, for claims filed on or after March 27, 2017, new regulations apply that change the framework for how an ALJ must evaluate medical opinion evidence.  20 C.F.R. § 416.920c; *see also Revisions to Rules Regarding the Evaluation of Medical Evidence*, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017).  The ALJ applied the new regulations because Plaintiff filed her Title XVI claim after March 27, 2017.  *See* Tr. 29-31.

Under the new regulations, the ALJ will no longer "give any specific evidentiary weight . . . to any medical opinion(s)."  *Revisions to Rules*, 2017 WL 168819, 82 Fed. Reg. 5844-01, 5867–68.  Instead, an ALJ must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings from medical sources.  20 C.F.R. § 416.920c(a)–(b).  The factors for evaluating the persuasiveness of medical opinions and prior administrative medical findings include supportability, consistency, relationship with the claimant, specialization, and "other factors that tend to support or contradict a medical opinion or prior administrative medical finding" including but not limited to "evidence showing a medical source has familiarity with the other evidence in the

claim or an understanding of our disability program's policies and evidentiary

requirements."  20 C.F.R. § 416.920c(c)(1)-(5).

The ALJ is required to explain how the most important factors,

supportability and consistency, were considered.  20 C.F.R. § 416.920c(b)(2).

These factors are explained as follows:

> (1) *Supportability.*  The more relevant the objective medical evidence and
> supporting explanations presented by a medical source are to support his
> or her medical opinion(s) or prior administrative medical finding(s), the
> more persuasive the medical opinions or prior administrative medical
> finding(s) will be.

> (2) *Consistency.*  The more consistent a medical opinion(s) or prior
> administrative medical finding(s) is with the evidence from other medical
> sources and nonmedical sources in the claim, the more persuasive the
> medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. § 416.920c(c)(1)-(2).

The ALJ may, but is not required to, explain how "the other most persuasive

factors in paragraphs (c)(3) through (c)(5)" were considered.  20 C.F.R.

§ 416.920c(b)(2).  However, where two or more medical opinions or prior

administrative findings "about the same issue are both equally well-supported . . .

and consistent with the record . . . but are not exactly the same," the ALJ is

required to explain how "the most persuasive factors" were considered.  20 C.F.R.

§ 416.920c(b)(2).

These regulations displace the Ninth Circuit's standard that require an ALJ

to provide "specific and legitimate" reasons for rejecting an examining doctor's

opinion.  *Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022).  As a result, the ALJ's decision for discrediting any medical opinion "must simply be supported by substantial evidence."  *Id.*

### 1.    Medical Opinions of LMHC Bringman and Dr. Uhl

LMHC Bringman has been Plaintiff's treating mental health counselor since 2018.  Tr. 1047-49.  In December 2021, LMHC Bringman submitted a letter on behalf of Plaintiff which stated that Plaintiff had severe mental health impairments and that she was unable "to tolerate public settings or work settings."  Tr. 1047.  The ALJ found LMHC Bringman's letter unpersuasive, explaining that it was unsupported both by her own treatment notations which indicated Plaintiff's functional status was only moderately impaired and by the fact that it was more functionally limiting than any other medical opinion in the record, particularly compared to the opinion of psychologist Dr. W. Douglas Uhl.  Tr. 29-30.

Plaintiff argues that the ALJ's rejection of LMHC Bringman's letter focused selectively on treatment notes where Plaintiff was cooperative while ignoring the abnormal findings, or at least without explaining why certain findings were more probative than others.  ECF No. 7 at 12.  Plaintiff also argues that it was improper for the ALJ to disregard LMHC Bringman's opinion on the basis that it was inconsistent with the opinion of Dr. Uhl, because the ALJ's reliance on Dr. Uhl's opinion was only partial.  *Id.* at 14.  Specifically, Plaintiff claims that the ALJ erred

by identifying Dr. Uhl's assessment as persuasive "only to the extent that it supported her residual functional capacity assessment." *Id.*; *see also* Tr. 30 (writing that Dr. Uhl's opinion was persuasive insofar as it was consistent with contemporaneous findings showing that Plaintiff was oriented with some insight and abstract thinking skills despite her depression, anxiety, and other disorders, but unpersuasive "to the extent [it] could be read as being consistent with a finding that the claimant has up to a moderate limitation[ ] in terms of understanding, remembering, or applying information and adapting or managing [her]self.").

Plaintiff has not met her burden to show that the ALJ's interpretation of LMHC Bringman's letter was unsupported by substantial evidence. As aforementioned, "[s]ubstantial evidence is more than a mere scintilla but less than a preponderance." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (citation omitted). The ALJ's decision should be upheld where the "evidence is susceptible to more than one rational interpretation." *Id.* (citation omitted). The court "must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina*, 674 F.3d at 1111.

The ALJ's skepticism of LMHC Bringman's abrupt claim that Plaintiff's impairments were severe and that she could not maintain employment was well-warranted given that LMHC Bringman's previous treatment notes assessed Plaintiff as only moderately impaired. *See* Tr. 1021 (assessing Plaintiff as

ORDER DENYING PLAINTIFF'S MOTION TO REMAND CLAIM ~ 20

moderately impaired in June 2021), 1032-36 (assessing Plaintiff as moderately

impaired in October 2021); 1053 (assessing Plaintiff as moderately impaired in

November 2021).  Neither Plaintiff nor LMHC Bringman explained why Plaintiff's

impairment suddenly worsened.  As Plaintiff correctly notes, it is true that LMHC

Bringman's reports often discussed Plaintiff's anxiety, depression, conflict with

her family, and physical pain.  *See generally* Tr. 1021-46.  However, those same

reports indicate Plaintiff is oriented times three, appeared and behaved

appropriately, and only suffered moderate impairment.  *Id.*  These observations,

coupled with the other objective medical evidence indicating Plaintiff only

suffered a mild to moderate impairment, *see supra* Part A., reasonably supports the

ALJ's decision to disregard the December 2021 letter.

The Court also rejects Plaintiff's claim that the ALJ's improper treatment of

Dr. Uhl's medical notes led to an incorrect construction of LMHC Bringman's

reports.  Plaintiff argues that by adopting only some of Dr. Uhl's findings the ALJ

impermissibly supplanted an expert medical opinion.  ECF No. 7 at 15.

Dr. Uhl included a checklist in his psychiatric evaluation of Plaintiff wherein

he ranked Plaintiff's function across various abilities in a checklist-style list.  With

the exception of two categories on the form, he found all of Plaintiff's impairments

to be only mild to moderate, and rated her overall work function impairment as

only moderate.  Tr. 609-10.[1]   The severity of the remaining two categories were

marked as "indeterminate severity" and pertained to Plaintiff's ability to

understand, remember, and persist in tasks.  *Id.*  However, he also found that

Plaintiff's memory was within normal limits.  *Id.* 611.

Reading the ALJ's order against the evaluation form, it is apparent that the

ALJ had these indeterminate categories in mind when she wrote:

> [T]o the extent Dr. Uhl's medical opinion can be read as being
> consistent with a finding that the claimant has up to a moderate
> limitations [sic] in terms of understanding, remembering, or applying
> information and adapting or managing oneself, this is found to be
> unpersuasive for being unsupported by an additional contemporaneous
> objective finding of the claimant having memory within normal
> limitations, as well as inconsistent with the record as a whole.

Tr. 30.

---

[1] The categories included Plaintiff's ability to understand, remember, and

persist in tasks; maintain a schedule without supervision; learn new tasks; perform

routine tasks without special supervision; adapt to changes in a routine work

setting; make simple work-related decisions; be aware of normal hazards; ask

simple questions; communicate and perform effectively at work; maintain

appropriate behavior at work; complete a normal work day and week without

interruptions from psychologically-based symptoms; and set realistic goals and

plan independently.  Tr. 609-10.

In context, it is not apparent that the ALJ was disregarding a portion of Dr. Uhl's analysis.  Instead, she was merely observing that where a category was identified as indeterminate, reference to other portions of the same psychological evaluation and the record as whole indicated that it would be unreasonable to conclude therefrom that Plaintiff suffered a moderate limitation in those areas. Accordingly, Plaintiff's argument that the ALJ was excising certain portions of Dr. Uhl's report to reach her own independent and unsupported conclusion is rejected.

   2.   *Medical Opinion of Dr. Patrick Metoyer*

Plaintiff contends that the ALJ also erred in considering the opinion of Dr. Metoyer, who also performed a psychological assessment of Plaintiff.  Tr. 827. Dr. Metoyer found that Plaintiff suffered mild limitations with respect to her memory; moderate to marked issues with attendance; moderate limitations with respect to her ability to interact with coworkers and the public; mild to moderate limitations on her ability to understand, remember, and carry out complex instructions; moderate to marked limitations on her ability to complete a normal workday or workweek without interruption; and moderate to marked limitations on her ability to deal with workplace stress.  Tr. 831.  The ALJ found that the mild to moderate limitations described by Dr. Metoyer were persuasive for their consistency with Dr. Uhl's medical opinion, but that the areas of moderate to marked limitation were less so due to their inconsistency with Dr. Uhl's opinion

1    and with the opinions of state agency psychological consultant Dr. Michael Brown.

2    Tr. 30-31.  Additionally, the ALJ took issue with the fact that Dr. Metoyer's

3    medical opinion relied heavily on Plaintiff's self-reports, because Plaintiff's self-

4    reports were sometimes contradictory.  *Id.*

5          As with Dr. Uhl, Plaintiff argues that it was contradictory and irrational for

6    the ALJ to rely on certain portions of Dr. Metoyer's medical testimony but to

7    discount other portions of the same record.  ECF No. 7 at 15.  She also maintains

8    that it was wrong to discredit portions of the report on the basis that Dr. Metoyer

9    over-relied on her self-reports because psychological evaluations are necessarily

10    always based on an individual's subjective reports.  *Id.* at 16.

11          The ALJ's assessment of the supportability and consistency of Dr.

12    Metoyer's opinion is supported by substantial evidence.  The ALJ's identification

13    of certain portions of Dr. Metoyer's opinion as consistent with the reports of Dr.

14    Uhl and Dr. Brown was pertinent to an evaluation of the consistency factor.  20

15    C.F.R. § 416.920c(c)(2).  The decision to credit the findings in Dr. Metoyer's

16    opinion which were consistent with the findings of other medical providers does

17    not support remand.  Likewise, the ALJ's analysis of the supportability of Dr.

18    Metoyer's medical notes was also appropriate even though she did not credit

19    Plaintiff's self-reports.  Both "objective medical evidence" and "supporting

20    evidence presented by a medical source" are relevant to an ALJ's determination of

the supportability of a medical opinion.  20 C.F.R. § 416.920c(c)(2).  The ALJ did

not need to consider Plaintiff's testimony, which she found incredible, in reaching

a determination about which conclusions in Dr. Metoyer's report were supported

and which were not.  *See Vasquez*, 572 F.3d at 591 ("The ALJ is responsible for

determining credibility, resolving conflicts in medical testimony, and for resolving

ambiguities.").

**CONCLUSION**

Having reviewed the record and the ALJ's findings, the Court concludes the

final decision of the Commissioner is supported by substantial evidence and free of

harmful legal error.  Because the Court finds that the order was free from harmful

legal error, it does not consider the parties' arguments over the proper remedy in

the event of reversal.

//

//

//

//

//

//

//

//

ORDER DENYING PLAINTIFF'S MOTION TO REMAND CLAIM ~ 25

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1.  Plaintiffs' Motion to remand her claim to the Social Security Administration for Title XVI benefits (ECF No. 7) is **DENIED**.

2.  Defendant's Motion for this Court to affirm the decision of the Commissioner (ECF No. 11) is **GRANTED**.

The District Court Executive is directed to enter this Order, enter judgment accordingly, furnish copies to counsel, and **CLOSE** the file.

DATED September 12, 2023.



THOMAS O. RICE
United States District Judge

ORDER DENYING PLAINTIFF'S MOTION TO REMAND CLAIM ~ 26